**UNITED STATES of America,
Plaintiff,**

v.

**CENTRAL MOTOR LINES, INC., a corporation, et al., Defendants.**

**No. 2521.**

United States District Court,
W. D. North Carolina,
Charlotte Division.

June 2, 1972.

Supplemental Opinion Aug. 11, 1972.

**1254**

Stuart P. Herman, Harvey Knudson, Jr., Squire Padgett, David L. Rose, David Norman, U. S. Dept. of Justice, Washington, D. C., for plaintiff.

W. P. Sandridge and Charles F. Vance, Jr., Winston-Salem, N. C., Francis M. Fletcher, Jr., Charlotte, N. C., Hugh J. Beins, Washington, D. C., and Marvin Gittler, Chicago, Ill., for defendants.

## ORDER

McMILLAN, District Judge.

This cause came on for hearing today on the Motion filed by the defendant, Central Motor Lines, Inc., dated May 24, 1972, for an Order as to whether its proposed handling of seniority lists under the Decree, and particularly under Paragraphs 7 and 8 thereof, is correct, and, if not correct, for an Order specifying the correct manner of handling such seniority lists.

All parties hereto were given due notice of the Hearing on this Motion. Present were Mr. Stuart P. Herman, counsel for the plaintiff, W. P. Sandridge, counsel for said Central Motor Lines, Inc., Hugh Beins, counsel for Local Unions 71 and 391 of International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Francis M. Fletcher, counsel for Local Unions Nos. 71, 391 and 710 of International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America. Mr. Marvin Gittler, counsel for Local Union 710 advised the Court that he would not be present.

The proposed handling of this seniority list for the Charlotte West Board (Local Union 710) was attached to the Motion. The Court has considered said seniority list. Assuming that the dates shown opposite the respective names on that list are factually correct, the Court finds that said list is a correct handling in Column 1 of company seniority and in Column 2 of Charlotte West Board seniority and is in accordance with and in full compliance with Paragraph 7 of the Decree. A copy of this West Board list is attached to this Order.

The company's proposed handling of the seniority list for the Charlotte East Board (Local Union 71), together with explanation thereof, is attached to the Motion. The Court has considered the company's proposed handling of the seniority list for the Charlotte East Board and finds that it is not in compliance with Paragraph 8 of the Decree. The Court has indicated to counsel the proper handling of the seniority list for the Charlotte East Board and a seniority list has been compiled in accordance with the Court's direction. This seniority list is attached to this Order. Assuming that the dates shown opposite the respective names on this list are factually correct, the Court finds that said list is a correct handling in Column 2 of company seniority and in Column 1 of Charlotte East Board seniority and is in full compliance with Paragraph 8 of the Decree.

## SUPPLEMENTAL OPINION

This matter is before the court on the motion of defendant Central Motor Lines, Inc., seeking to enjoin defendant Local 710 of the International Brotherhood of Teamsters from processing any grievances or complaints based upon the Charlotte West Board seniority list dated May 8, 1972, which is the same seniority list as that attached to this court's order herein of June 2, 1972.

## PRIOR PROCEEDINGS

The case was tried at length in this court and resulted in a lengthy decree supported by findings of fact and conclusions of law as reported in United States v. Central Motor Lines, Inc., 338 F.Supp. 532 (W.D.N.C.1971).

The essential question was whether Central had discriminated against black persons by failing or refusing to employ them for road driving jobs, or to consider them for employment or for transfer to driving jobs, including road driving jobs, on the same basis as whites. The court concluded that the collective bargaining agreements, which do not allow incumbent blacks to transfer to the previously all-white road driving positions with seniority retention for bidding and layoff purposes, constituted unlawful deterrents to transfer and resulted in present and future discrimination in violation of Title VII of the Civil Rights Act of 1964.

Paragraph 11 of the conclusions of law in that opinion read in part as follows:

"The current collective bargaining agreements which do not allow incumbent black employees, assigned to their jobs on the basis of race, to transfer to the previously all-white over-the-road driving positions with seniority retention for bidding and layoff purposes, although racially neutral and lawful on their face, do, when combined with the company's prior hiring practices, constitute an unlawful present inhibition to transfer and result in present and future discrimination in violation of Title VII which is hereby being remedied."

Local 710 of the Teamsters Union was and is a party to the suit. At the time of the decree the court neither enjoined nor ordered specific relief against Local 710, which is based in Chicago and which represents the road drivers on Central's seniority list for the West Board (trips between Charlotte or Greensboro in the east and Chicago and other points in the west). However, the court directed Central to provide members of the affected class of incumbent blacks who transfer to the West Board with seniority credits for all purposes. United States v. Central Motor Lines, Inc., supra, at 559. The court's decree provided in relevant part that:

"7. Members of the Affected Class who transfer to the West Board (Local 710 runs) pursuant to this Decree shall carry their terminal seniority for all bidding purposes and company seniority for all fringe benefits. In future competition for work opportunity, layoff, bid preference and vacation schedule, members of the Affected Class shall compete based on their terminal seniority and other drivers shall compete based on their West Board seniority." United States v. Central Motor Lines, Inc., supra, 338 F.Supp., at 563.

Subsequently, members of the affected class, including C. W. Walker, James Quick and Louis McGibony, transferred to road driver jobs covered by the West Board seniority list, and on May 24, 1972, Central filed a motion herein stating, among other things, that a dispute had arisen concerning the proper handling of seniority lists under the above set out paragraph 7 of the decree. After due notice was given to all parties concerned, including counsel for Local 710, the court held a hearing on June 2, 1972, on Central's motion and on June 2, 1972, entered an order which provided in part:

"The proposed handling of this seniority list for the Charlotte West Board (Local Union 710) was attached to the Motion. The Court has considered said seniority list. Assuming that the dates shown opposite the respective names on that list are factually correct, the Court finds that said list is a correct handling in Column 1 of company seniority and in Column 2 of Charlotte West Board seniority and is in accordance with and in full compliance with Paragraph 7 of the Decree. A copy of this West Board list is attached to this Order."

## THE CURRENT DISPUTE

After the entry of the June 2, 1972 order, the defendant Local 710 through its regular grievance procedure filed a series of grievances in Chicago against Central, either protesting in general terms the West Board seniority list of May 8, 1972 which was attached to the court's June 2, 1972 order, or specifically protesting the seniority positions of C. W. Walker, James Quick and Louis McGibony, three black truck drivers, members of the affected class as they appear on the May 8, 1972 West Board seniority list.

One of these grievances was signed personally by John Kelly, Business Agent for Local 710. It was signed by him as "John Kelly B/A Drivers Et/Al."

The court is also informed by affidavits duly filed that:

1. One of the purposes of the grievance is "to find out if the judge has power to change our contract."

2. The grievances were heard in Chicago on June 27, 1972, before the Chicago Joint State and Local Committee.

3. After hearing a statement of the grievance and the company's response (which asserted correctly that the matter is covered by this court's previous decision), the chairman of the committee, who is a Union representative, made a motion that the grievance be "deadlocked," and the motion was unanimously passed.

4. The "deadlock" means that no decision is made on the grievance at the present level, and that the matter will be in suspense until it is reached before the Joint Area Committee in Chicago at some date presumably in September; meantime, the grievance remains unresolved.

Central and the United States join in pressing the view that Local 710 has violated the order of court simply by receiving and processing the grievance, and especially by allowing John Kelly, Business Agent of the Union, to file a grievence signed only by him on behalf of "John Kelly B/A Drivers Et/Al." In support of this proposition they argue that traditionally unions do not have to process grievances and do not process grievences if they think they are groundless; that the Union should not have processed these particular grievances, and that the failure to exercise their discretion to squelch a grievance at its outset is a violation of the order of court.

Insofar as the filing or the processing of the grievance is concerned, this court is unable to agree. In a day when much human liberty depends on due process and its observance by those in high places, it would be a strange type of ruling which would require that arbitration be denied any grievance regardless of how frivolous it is.

■ I do not choose to require a union to reject a grievance without a hearing and thereby lend further weight to an arbitrary process already too easily subject to abuse. This court is unwilling to require or even suggest that merely filing or hearing a grievance is a violation of this court's order. As the Supreme Court said in United Steel Workers v. American Manufacturing Company, 363 U.S. 564, 568, 80 S.Ct 1343, 1346, 4 L.Ed.2d 1403:

"The agreement is to submit all grievances to arbitration, not merely those which the court will deem meritorious. The processing of even frivolous claims may have therapeutic values of which those who are not a part of the plant environment may be quite unaware."

It is fundamental to fair procedure that there be a hearing with notice and opportunity for contestants to be heard. In putting the matter before the arbitration tribunal, the Union is simply doing what this and other courts require habitually of themselves and other governmental institutions. To encourage unconsidered *ex parte* rejection of grievances is to strike a blow at fair play and to display an inconsistent and over-reaching disregard of those elements of fair play which we call due process.

Therefore, this court refuses to say that following the procedure of filing or processing the grievances is a violation of the order of this court.

The same tolerance is hard to entertain for the substantive action of the arbitration committee itself. It is, as Central and the United States assert, entirely obvious that the alleged grievances are frivolous; that they ask the employer to violate this court's order of December 23, 1971 (from which no appeal has been taken). It is obvious that if Local 710 and Central Motor Lines agreed with the grievance they would be violating the court order and the Civil Rights Act upon which it is based, and that unless the order itself is erroneous the grievance itself is frivolous beyond question. Grievance procedures are not an alternative to appeal to a Circuit Court of Appeals.

Under the circumstances, the action of the Joint Committee in declining to decide the issue and in voting to pass the buck without decision to the next stage of arbitration is an act of doubtful responsibility; it tends to encourage the notion among union members that the Civil Rights Act and the court order may "go away"; it keeps the issue alive; and it creates and aggravates predictable tensions which would be reduced if the issue were forthrightly handled on the merits by equally forthright compliance with the Civil Rights Act and the court order.

### CONCLUSION

Therefore, although no violation of the order is found in the reported conduct of Local 710 to date, and although it may be possible that (as suggested by counsel) high level union debate rather than working level pragmatism may produce area or national solutions to the attitudes represented by the grievances, nevertheless the parties to this suit, including Local 710, will be expected to continue to abide by the order of this court, regardless of what they may do or fail to do at any level of the grievance procedure.